IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MURRAY ENERGY CORPORATION,**

       Plaintiff,

v.           //    CIVIL ACTION NO. 1:15CV110
                          (Judge Keeley)

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY, GINA MCCARTHY**
**in her official capacity as**
**Administrator, United States**
**Environmental Protection Agency,**
**UNITED STATES ARMY CORPS OF ENGINEERS,**
**and JO ELLEN DARCY, in her official**
**capacity as Assistant Secretary of the Army,**

       Defendants.

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS [DKT. NOS. 8, 13]**

Pending before the Court is the challenge by the defendants, the United States Environmental Protection Agency (the "EPA"); the EPA Administrator, Gina McCarthy (the "Administrator"); the United States Army Corps of Engineers; and the Assistant Secretary of the Army (the "Secretary"), Jo Ellen Darcy (collectively, the "Agencies"), to this Court's subject matter jurisdiction. They contend that the complaint of the plaintiff, Murray Energy Corporation ("Murray"), must be brought in the appropriate circuit court of appeals. Murray disputes this challenge, arguing that jurisdiction properly lies in the district court. Based on the prevailing interpretation of the relevant statute, this Court

**MURRAY ENERGY CORP. v. EPA, ET AL.                        1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

concludes that it lacks jurisdiction over this matter. It therefore **DISMISSES WITHOUT PREJUDICE** Murray's complaint, and **DENIES AS MOOT** all pending motions.

**I.**

In 1948, Congress enacted the so-called Clean Water Act ("CWA") with the objective of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To this end, it prohibited the "discharge of any pollutant," 33 U.S.C. § 1311(a), which it defined, in pertinent part, as "any addition of any pollutant to <u>navigable waters</u> from any point source." 33 U.S.C. § 1362(12) (emphasis added). Under 33 U.S.C. §§ 1342(a) and 1344(a), it authorized the Administrator and the Secretary to issue permits allowing discharge in limited circumstances.

The jurisdiction of the Agencies turns –- to a large extent –- on the definition of "navigable waters," which, under the CWA, means "waters of the United States." 33 U.S.C. § 1362(7). In an effort to clarify that meaning, the EPA finalized a rule in 1983 that defined "waters of the United States" as:

> (a) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or

**MURRAY ENERGY CORP. v. EPA, ET AL.**                          **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

> foreign commerce, including all waters which are subject to the ebb and flow of the tide;
>
> (b) All interstate waters, including interstate "wetlands;"
>
> (c) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, "wetlands," sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce . . . ;
>
> (d) All impoundments of waters otherwise defined as waters of the United States under this definition;
>
> (e) Tributaries of waters identified in paragraphs (a) through (d) of this definition;
>
> (f) The territorial sea; and
>
> (g) "Wetlands" adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a) through (f) of this definition.

40 C.F.R. § 122.2; see also 33 C.F.R. § 328.3(a) (providing an identical definition for the Corps).

When, in 1986, the Corps attempted to extend this definition by including the habitats of migratory birds, that effort was rebuffed by the Supreme Court of the United States in Solid Waste Agency of N. Cook Cnty. v. United States Army Corps of Eng'rs, 531 U.S. 159 (2001) ("SWANCC"). There, the Supreme Court held that the so-called "Migratory Bird Rule" "exceed[ed] the authority granted to [the Corps] under § 404(a) of the CWA." Id. at 174.

3

**MURRAY ENERGY CORP. v. EPA, ET AL.                    1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

Five years later, the Supreme Court again addressed the scope of the Agencies' jurisdiction in Rapanos v. United States, 547 U.S. 715 (2006). That decision produced multiple opinions, most notably a four-Justice plurality authored by Justice Scalia and a concurrence authored by Justice Kennedy. Each of these opinions articulated a different test for determining the outer limits of the Agencies' jurisdiction over "waters of the United States." The plurality concluded that waters fall within the CWA's purview "if they bear the 'significant nexus' of physical connection" to a traditional navigable water. Id. at 755. Although Justice Kennedy would also require a "significant nexus," he refined the test further by asking whether a given feature "significantly affect[s] the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" Id. at 780 (Kennedy, J., concurring).

In April 2014, against the backdrop of SWANCC and Rapanos, the EPA and the Corps proposed a new definition of "waters of the United States." See 79 Fed. Reg. 22,188 (Apr. 21, 2014). That definition became final in June 2014, when the Agencies published the so-called "Clean Water Rule," which includes an effective date of August 28, 2015. See 80 Fed. Reg. 37,073 (June 29, 2015).

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

According to Murray, the Clean Water Rule greatly extends the Agencies' reach by "declar[ing] that expansive new categories of non-primary waters are 'waters of the United States.'" (Dkt. No. 14 at 4).

On the same date that the Clean Water Rule was published, Murray, invoking federal question jurisdiction, filed this action for declaratory and injunctive relief, challenging the rule's lawfulness on multiple fronts. The Agencies responded with a motion to stay the case based, in part, on their position that "exclusive jurisdiction to hear challenges to the Clean Water Rule lies in the circuit courts of appeals."[1] (Dkt. No. 29 at 5).

Although Murray contends that its challenges to the Clean Water Rule properly rest with the district court, it nevertheless filed a petition for review in the Sixth Circuit "simply as a protective measure."[2] (Dkt. No. 15 at 7). Murray also filed a

---

[1] Notably, the Agencies did not file a motion to dismiss Murray's complaint for lack of jurisdiction. Regardless, courts have "an independent obligation to determine whether subject-matter jurisdiction exists." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006).

[2] Before Murray filed its petition for review, several other plaintiffs had filed petitions raising similar legal challenges. Pursuant to 28 U.S.C. § 2112(a)(3), the Judicial Panel on Multidistrict Litigation ("JPML") consolidated those petitions, by way of random selection, in the Sixth Circuit. For that reason, Murray filed its petition for review in the Sixth Circuit rather than the Fourth Circuit.

**MURRAY ENERGY CORP. v. EPA, ET AL.**                            **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION, AND DENYING AS MOOT ALL PENDING MOTIONS**

motion for preliminary injunction in this Court, but urges it, in the first instance, to determine whether it has subject matter jurisdiction over these proceedings. (Dkt. No. 30 at 3) ("There is no reason that this Court should defer assessing its jurisdiction until after the Sixth Circuit performs its own jurisdictional analysis . . . ."). The Court agrees that a jurisdictional determination is proper, and, after carefully reviewing the relevant statutes and decisions, concludes that, under the law of the Fourth Circuit, jurisdiction over Murray's challenges to the Clean Water Rule is vested exclusively in the Sixth Circuit.

**II.**

Pursuant to § 509(b)(1) of the CWA, 33 U.S.C. § 1369(b)(1), Congress has provided in relevant part as follows:

> Review of the Administrator's action . . . (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title, [and] (F) in issuing or denying any permit under section 1342 of this title . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

"Where that review is available, it is the exclusive means of challenging actions covered by the statute . . . ." Decker v. Nw. Envtl. Def. Ctr., __ U.S. __, __, 133 S. Ct. 1326, 1334 (2013).

6

**MURRAY ENERGY CORP. v. EPA, ET AL.                          1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

Here, the Agencies contend that the Clean Water Rule "constitutes both a 'limitation' under Section 509(b)(1)(E) and an underlying permitting regulation under Section 509(b)(1)(F)." (Dkt. No. 29 at 7). Murray, on the other hand, argues that "the final rule is not an 'other limitation' under 509(E) because it 'imposes no restrictions' under one of the Section 509 listed programs," and that "[t]he Sixth Circuit also lacks jurisdiction under 1369(b)(1)(F) because this case does not involve 'issuing or denying any permit.'" (Dkt. No. 30 at 4) (citations omitted). Murray's rigid application of § 1369(b)(1) is contrary to the prevailing flexible approach utilized by many courts, particularly the Fourth Circuit.

In Virginia Elec. & Power Co. v. Costle, 566 F.2d 446, 449 (4th Cir. 1977) ("VEPCO"), the public utilities industry challenged regulations "concerned with structures used to withdraw water for cooling purposes, not with discharges of pollutants into the water." Importantly, the EPA relied on §§ 1311 (prohibiting the "discharge of any pollutant"), 1316 (defining "standard[s] of performance," which the Administrator was to implement in order to achieve the "greatest degree of effluent reduction" from point sources), and 1326(b) (requiring any standard promulgated under §§

**MURRAY ENERGY CORP. v. EPA, ET AL.                              1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

1311 or 1316 to reflect "the best technology available for minimizing adverse environmental impact") as authority for the regulations. Confronting the same jurisdictional question presented here, the utility companies filed petitions for review in both the Fourth Circuit and the Eastern District of Virginia. Id. at 448. After finding exclusive appellate jurisdiction under § 1369(b)(1), the district court dismissed the case for lack of jurisdiction. Id.

On appeal, the Fourth Circuit affirmed the district court's dismissal for lack of jurisdiction. In so doing, the court focused on "whether the regulations constituted 'effluent limitation(s) or other limitation(s)' within the meaning of § 509(b)(1)(E)." Id. at 449. After determining that the regulations were not "effluent limitations," the court honed in more specifically on "what are 'other limitation(s)' under § 509(b)(1)(E), and do the questioned regulations fall within them." Id. That determination required further examination of whether the regulations fell under either §§ 1311 or 1316. Id.

The utilities presented two arguments against exclusive appellate jurisdiction.

> First, it is contended that the regulations are not actually limitations until, in the words of [§ 1326(b)],

**MURRAY ENERGY CORP. v. EPA, ET AL.**                    **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

> they are "standards established pursuant to [§ 1311] or [§ 1316] of this Act and applicable to a point source." The utilities claim that, while the regulations are presumptively applicable to individual point sources, the presumption may be rebutted, on a case-by-case basis, in § 402 permit proceedings. It is therefore argued that a limitation under [§ 1311] or [§ 1316] cannot be deemed applicable prior to its adoption in an individual permit proceeding.
>
> . . .
>
> Secondly, the utilities contend that the regulations do not constitute limitations in any sense, but are merely intended to provide guidance to the permit issuer.

Id. at 449-50.

The court rejected the first argument after concluding that it was foreclosed by E.I. du Pont de Nemours & Co. v. Train, 430 U.S. 112 (1977), in which the Supreme Court addressed the jurisdictional issue. There, the petitioners had argued that standards promulgated pursuant to § 1311 were not within the purview of § 509(b)(1)(E) without a permitting decision as to whether an individual failed to comply with the standard. See du Pont, 430 U.S. at 136. The Supreme Court rejected the argument primarily on the basis that "petitioners' construction would produce the truly perverse situation in which the court of appeals would review numerous individual actions issuing or denying permits pursuant to § 402 but would have no power of direct review of the basic

9

**MURRAY ENERGY CORP. v. EPA, ET AL.**                           **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

regulations governing those individual actions." Id. (citation omitted). Relying on that reasoning, the court in VEPCO explained that "[t]he challenged regulations in the present case were issued under [§§ 1311 and 1316], as well as [§ 1326], and though in part they may only be presumptively applicable, that does not distinguish them from the effluent limitations considered in du Pont for jurisdictional purposes." 566 F.2d at 450.

The Fourth Circuit also rejected the utilities' second argument that the regulations were not actually limitations. As the court observed, "the regulation is mandatory in terms that it requires certain information to be considered in determining the best available technology for intake structures." Id. It explained that "[t]his in itself is a limitation on point sources and permit issuers, for we construe that term as a restriction on the untrammeled discretion of the industry which was the condition prior to the passage of the statute." Id. Furthermore, "the [§ 1326] regulations here do refer to information that must be considered in determining the type of intake structures that individual point sources may employ, and, by that token, they are limitations." Id.

10

**MURRAY ENERGY CORP. v. EPA, ET AL.** 1:15CV110

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

Since VEPCO, other circuit courts, including the Eighth Circuit, have adopted the Fourth Circuit's reasoning. In Iowa League of Cities v. EPA, 711 F.3d 844, 866 (8th Cir. 2013), the Eighth Circuit agreed with VEPCO in holding that "an agency action is a 'limitation' within the meaning of section 509(b)(1)(E) if entities subject to the CWA's permit requirements face new restrictions on their discretion with respect to discharges or discharge-related processes." See also Riverkeeper, Inc. v. EPA, 358 F.3d 174, 183-84 (2d Cir. 2004) (citing VEPCO for the conclusion that "[t]he Rule is an 'other limitation' that we have jurisdiction to review pursuant to CWA § 509(b)(1), 33 U.S.C. § 1369(b)(1)"); Nat. Res. Def. Council, Inc. v. EPA, 673 F.2d 400, 405 (D.C. Cir. 1982) ("Like the regulations in VEPCO, the CPRs are 'a limitation on point sources and permit issuers' and 'a restriction on the untrammeled discretion of the industry' that existed before the passage of the CWA.").

In 2012, the Eleventh Circuit determined that it lacked exclusive appellate jurisdiction over a challenge to a rule that "free[d] the industry from the constraints of the permit process and allow[ed] discharge of pollutants from water transfers." Friends of the Everglades v. EPA, 699 F.3d 1280, 1287 (11th Cir.

**MURRAY ENERGY CORP. v. EPA, ET AL.**                     **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

2012). Nevertheless, it reached that conclusion only after determining that the rule in question did "the exact opposite" of the regulations at issue in VEPCO. Id.

VEPCO's flexible approach to the issue of jurisdiction under § 509(b)(1) finds further support in the Supreme Court's decision in Crown Simpson Pulp Co. v. Costle, 445 U.S. 193 (1980) (per curiam). There, a pulp company challenged the EPA's denial of requested variances from effluent limitations and its veto of state-proposed permits. Id. at 195. The company filed a petition for review directly in the Ninth Circuit, which dismissed the case after concluding that it lacked jurisdiction under § 509(b)(1)(E) and (F). Id. The Supreme Court granted certiorari to address "whether the EPA's action denying a variance and disapproving effluent restrictions contained in a permit issued by an authorized state agency is directly reviewable in the United States Court of Appeals under § 509(b) of the Act." Id. at 194.

In reversing the Ninth Circuit's dismissal for lack of jurisdiction, the Supreme Court expressly adopted the argument of the concurring opinion below. Id. at 196. That opinion urged that "vesting jurisdiction in the courts of appeals under § 509(b)(1)(F) would best comport with the congressional goal of ensuring prompt

12

**MURRAY ENERGY CORP. v. EPA, ET AL.**                    **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

resolution of challenges to EPA's actions and would recognize that EPA's veto of a state-issued permit is <u>functionally similar</u> to its denial of a permit in States which do not administer an approved permit-issuing program." <u>Id.</u> (emphasis added).

Similarly, the Sixth Circuit -- where Murray has filed a petition for review -- construes the appellate jurisdiction provided by § 509(b)(1)(F) broadly. In <u>Nat. Cotton Council v. EPA</u>, 553 F.3d 927, 929 (6th Cir. 2009), numerous groups challenged a rule that exempted from the CWA's permitting requirements pesticides applied in accordance with federal law. All the groups filed petitions for review in the respective appellate courts, and the JPML (as it has in the instant case) consolidated the petitions in the Sixth Circuit. <u>Id.</u> at 932. The environmental groups, which had filed a parallel action in the Northern District of California, challenged the Sixth Circuit's subject matter jurisdiction under § 509(b)(1) by filing a motion to dismiss. <u>Id.</u>

The Sixth Circuit denied the motion after concluding that the rule at issue satisfied § 509(b)(1)(F). <u>Id.</u> at 933. In so doing, it relied on two decisions from the Ninth Circuit, <u>Am. Mining Cong. v. EPA</u>, 965 F.2d 759, 763 (9th Cir. 1992), and <u>Nat. Res. Def. Council, Inc. v. EPA</u>, 966 F.2d 1292, 1296-97 (9th Cir. 1992), for

**MURRAY ENERGY CORP. v. EPA, ET AL.**                              **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

the proposition that a rule falls within the purview of § 509(b)(1)(F) if it "regulates the [underlying] permitting procedures," even if it does not amount to the actual denial of a permit. National Cotton Council, 553 F.3d at 933.

Here, there is no dispute that the Clean Water Rule will have an impact on Murray's permitting requirements. Indeed, that is the gravamen of Murray's complaint: "Complying with the final rule . . . will cost Murray substantial sums of money to apply for, obtain, and comply with permit conditions . . . ." (Dkt. No. 1 at 10). Additionally, Murray's own affiant has stated that "the final rule would have direct and substantial impacts on Murray Energy's active mining operations including requiring additional permits . . . ." (Dkt. No. 3-2 at 3).

Despite these allegations and representations, Murray deemphasizes, for jurisdictional purposes, the Clean Water Rule's effect on permitting by stating that "the final rule is merely a definitional provision." (Dkt. No. 30 at 4). Such a narrow reading of the rule, however, does not follow the teachings of Crown Simpson and National Cotton Council, which utilized a functional approach. Applying a similar approach here, it is clear that the Clean Water Rule effectively requires Murray to obtain

14

**MURRAY ENERGY CORP. v. EPA, ET AL.**                                    **1:15CV110**

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

additional permits, and it therefore falls within the scope of § 509(b)(1)(F).

Exclusive appellate jurisdiction is likewise required by § 509(b)(1)(E) because the Clean Water Rule amounts to an "other limitation" on Murray. The Agencies advise that the Clean Water Rule was promulgated, at least in part, as an "other limitation" on the discharge of pollutants under § 1311. The "discharge of pollutants" is defined as the "addition of any pollutant into navigable waters from any point source." § 1362(12). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, <u>ditch</u>, channel, . . . [etc.], from which pollutants are or may be discharged." § 1362(14) (emphasis added).

Here, Murray has expressed a specific concern about diversion ditches that it intends to build at its mines. (Dkt. No. 30-3). Because these ditches are point sources, it follows that the Clean Water Rule, which Murray contends would envelope its new ditches, is an other limitation under § 1311.

This conclusion finds support in <u>VEPCO</u>'s determination that an actual permitting decision under the rule in question was not necessary for § 509(b)(1)(E) jurisdiction. There, it was enough

**MURRAY ENERGY CORP. v. EPA, ET AL.** 1:15CV110

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

that the rule was a "limitation on point sources and permit issuers" because the term "limitation" was construed as "a restriction on the untrammeled discretion of the industry." VEPCO, 566 F.2d at 450.

In an effort to distinguish VEPCO, Murray makes much of the adjective "untrammeled" by implying that Murray was already regulated under the prior rule. At the same time, however, Murray describes the EPA's reach under the Clean Water Rule as "expansive" and "vastly broadened." (Dkt. No. 14 at 4-5). At bottom, the Court is unpersuaded that VEPCO's application is limited only to cases in which the affected industry enjoyed unfettered discretion prior to the issuance of the challenged rule.

Finally, the Court views exclusive appellate jurisdiction over this action as furthering "the congressional goal of ensuring prompt resolution of challenges to EPA's actions." Crown Simpson, 445 U.S. at 196. The jurisdictional scheme, which provides for consolidation of all such challenges in a single court of appeals, favors one decision on the merits. By avoiding consolidation in a single circuit court, that scheme would be undermined by, as another court has referred to it, a "patchwork quilt" of district

16

**MURRAY ENERGY CORP. v. EPA, ET AL.**                                1:15CV110

**MEMORANDUM OPINION AND ORDER DISMISSING WITHOUT
PREJUDICE PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION,
AND DENYING AS MOOT ALL PENDING MOTIONS**

court rulings. <u>Oklahoma ex rel. Pruitt v. EPA</u>, Nos. 15CV381, 15CV386, 2015 WL 4607903, at *4 (N.D. Okla. July 31, 2015).

### III.

In conclusion, the Court finds that, under the prevailing view, particularly that of the Fourth Circuit, exclusive jurisdiction over the legal challenges at bar resides in the Sixth Circuit, where Murray has filed a petition for review. The Court therefore **DISMISSES WITHOUT PREJUDICE** Murray's complaint, and **DENIES AS MOOT** all pending motions.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: August 26, 2015.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE